REQUESTED BY: Senator Howard L. Peterson Nebraska State Legislature State Capitol Lincoln, NE 68509
Dear Senator Peterson:
You have asked for our opinion of subsections (1), (2) and (3) of section 1 of LB 652 of the Eighty-Seventh Legislature, Second Session (1982). The same is hereinafter set out in full:
 Section 1. The lay governing body or organization of parents of a recognized church or religious denomination or the representatives of such body or organization may file an application for a waiver of certain general school laws, and rules and regulations adopted pursuant to such laws if the church or denomination:
(1) Does not accept any state or federal funds;
 (2) Has been established in the state for at least ten years prior to filing; and
 (3) Professes principles or tenets that are incompatible with the objectives, goals, and philosophy of education embodied in the laws of this state and the rules and regulations adopted pursuant to such laws.
If a `recognized church or religious denomination' meets the requirements of section 1 above and files an application for waiver with the State Board of Education, such board shall, if requested in the application:
 (1) Waive the provisions of Neb.Rev.Stat. § 79-1233
(Reissue 1976) requiring a certificate of permit for persons employed as teachers;
 (2) Waive the regulations relating to the instructional program, materials, and equipment requirements for approval status; and
 (3) Waive the school from making reports except those necessary to fulfill the provisions of law from which the school has not been exempted.
It is, of course, well settled law that a statute is open to construction only where the language used therein requires interpretation or may be reasonably considered ambiguous.State ex rel. Halloran v. Hawes, 203 Neb. 405,279 N.W.2d 96 (1979). Moreover, the fact, alone, that a legislative act is open to the criticism that it is uncertain or indefinite in some of its provisions does not ipso facto render it unconstitutional. If, however, the uncertain or indefinite portion of a statute is essential to, or connected with, the statute as a whole, it may, of course, render the entire statute invalid.
Upon applying the above-stated legal principles to section 1 of LB 652, we find that we are unable to discern the meaning to be subscribed to the words `recognized church or religious denomination' as the same are used therein. Simply stated, `recognized' by whom? Moreover, it is essential to determine the meaning of the words `recognized church or religious denomination' in section 1 of LB 652 in order to determine if the entity which files an application for waiver of certain general school laws is entitled to such a waiver. It is therefore our opinion that section 1 of LB 652 is ambiguous.
Even if it were assumed that the words `recognized church or religious denomination' in section 1 of LB 652 are not ambiguous, an assumption we are unable to make, we note that in order to qualify for a waiver of certain general school laws and the rules and regulations adopted pursuant thereto, a `recognized church or religious denomination' must, pursuant to subsection (2) of section 1 of LB 652, have been established in the State of Nebraska for at least ten years prior to filing the application for a waiver. Thus, it would appear that this subsection grants a preference to a `recognized church or religious denomination' that has been established in the state for at least ten years over those which have not been established in the state for that length of time. Thus, arguably, subsection (2) of section 1 of LB 652 is in violation of the establishment clause of the First Amendment of the Constitution of the United States. See, e.g., Buckley v. Valeo, 424 U.S. 1 (1976) and Torcaso v. Watkins, 367 U.S. 488 (1961).
We also note that in order to qualify for a waiver of certain general school laws a `recognized church or religious denomination' must, pursuant to subsection (3) of section 1 of LB 652, profess `principles of tenets that are incompatible with the objectives, goals, and philosophy of education embodied in the laws of this state and the rules and regulations adopted pursuant to such laws.' In connection therewith we note that this subsection would render inoperative certain statutes, rules and regulations which pertain to compulsory education, teacher certification and approval of the secular curriculum of the school. We also note that the Nebraska Supreme Court recently ruled that these same statutes, rules and regulations are not in violation of the Constitution of Nebraska or the Constitution of the United States. See, State ex rel. Douglas v. FaithBaptist Church, 207 Neb. 802, 301 N.W.2d 571 (1981).
The ratio decidendi of State ex rel. Douglas v. FaithBaptist Church, supra, was recently before the West Virginia Supreme Court. In State v. Riddle, No. 14910, December 11, 1981, the Riddles relied upon Wisconsin v.Yoder, 406 U.S. 205 (1972) as authority for their position that the free exercise clause of the First Amendment entitled them to completely disregard the West Virginia Compulsory School Attendance Law with impunity. The West Virginia Supreme Court disagreed. It stated:
 While the appellants in the case before us are sincere, dedicated, and competent parents, the principle which they are urging, namely the legitimacy of ad hoc
non-compliance with our school attendance laws, leads ineluctably to a hideous result. If we were to accept their reasoning, our holding would imply that parents have the right to keep their children in medieval ignorance, quarter them in Dickensian squalor beyond the reach of the ameliorating influence of the social welfare agencies, and so to separate their children from organized society in an environment of indoctrination and deprivation that the children become mindless automatons incapable of coping with life outside of their own families. We hold that the first and fourteenth amendments to the Constitution of the United States do not contemplate such a result. (Emphasis supplied).
Schools which are currently allowed to operate in the State of Nebraska pursuant to certain general school laws not only teach, but are also responsible for ministering to the health needs of children by providing a reservoir of professional expertise capable of ferreting out health-related problems, including physical and mental handicaps. Furthermore, a child's regular attendance at such schools guarantees a certain minimal protection from outrageous parental abuse or neglect. Those functions would be severely limited, if not destroyed, if LB 652 were to become operative law.
Very truly yours,
PAUL L. DOUGLAS Attorney General
Harold Mosher Assistant Attorney General